RECEIVED
IN LAKE CHARLES, LA

OCT 2 5 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CINDY LA JAN PATTON | : | DOCKET NO. 05 CV 0213 |
| VS. | : | JUDGE MINALDI |
| GONZALES, ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

The Plaintiff, Cindy La Jan Patton, ("Patton") has filed suit against Attorney General Alberto Gonzales, The United States Department of Justice, the Federal Bureau of Prisons and FCI, Oakdale, Louisiana asserting claims pursuant to Title VII of the Civil Rights Act of 1964, as amended in 42 U.S.C. *§ 2000, et seq.* In her Complaint, Patton alleges subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-16, *et seq.* Specifically, Patton, an employee at the Federal Correctional Complex at Oakdale, Louisiana ("FCC Oakdale"), asserts that she was discriminated against based upon her sex and in reprisal for the filing of a workplace violence complaint and an unfair labor charge when she was removed from the overtime roster at the Federal Correctional Institution ("FCI") at FCC Oakdale on December 4, 2003. Complaint ¶¶ 1-4. Patton has admittedly failed to comply with the mandatory exhaustion requirements that are a prerequisite to filing suit in federal court by failing to contact an Equal Employment Opportunity Commission ("EEOC") Counselor within forty-five (45) days of the alleged discrimination against her. Nevertheless, she brings this suit arguing that her noncompliance was justified because (1) while she knew she was being treated unfairly, she had no idea that her alleged

disparate treatment was an act of sexual discrimination committed by the defendants, and (2) her delay resulted from her unsuccessful attempt to resolve the matter directly and informally with the Warden of FCC Oakdale. The defendants have filed a Motion to Dismiss and/or in the Alternative for Summary Judgment [doc. #11 ], which is opposed [doc. #13]. The matter has been fully briefed and is ready for disposition.

*Background* [1]

Patton is employed at the Federal Bureau of Prisons ("BOP") at FCC Oakdale as a Management Analyst in the consolidated Health Services Department.[2] FCC Oakdale includes two separate worksites: the Federal Correctional Institution ("FCI") and the Federal Detention Center ("FDC") with a satellite camp. Defendants contend that Patton as a bargaining unit employee was subject to the terms and conditions of the Master Agreement between management

---

[1] Many of the facts included within this section have been compiled from the affidavits and documentary evidence submitted by the defendants. As discussed *infra* at page 6 of this opinion, because the defendant has brought a motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, this court may consider the complaint alone, the complaint supplemented by the undisputed facts in the record, or the complaint, undisputed facts, in addition to the court's resolution of disputed facts. In her Statement of Uncontested Facts, Patton does not contest the defendants' account of the facts but merely proffers theories and conclusions drawn from those facts. Similarly, in support of her claim Patton submits affidavits that include speculation and theories as to the motives and/or beliefs of the management officials but contain very little evidence or concrete facts. Summary Judgment affidavits must (1) be made upon personal knowledge; (2) set forth facts as would be admissible in evidence; and (3) shall show affirmatively that the affiant is competent to testify to matters stated therein.") *Strong v. City of Dallas*, 2005 WL 1544799, 4 (N.D. Tex. June 29, 2005). Patton's affidavits fail this test and if this court had chosen to decide this case on the merits rather than on the issue of jurisdiction, it is unlikely that significant portions of these affidavits would be admitted into the record. However, in this instance this court has simply resolved the factual issues which it considers material to a determination of jurisdiction as permitted by Rule 12(b)(1) and, therefore, it need not address formally the sufficiency of Patton's affidavits and other factual allegations.

[2] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Declaration of Tyrone Clements, Exhibit 1 attached thereto).

and the American Federation of Government Employees, and any local supplements or agreements between management and the local union.[3] A June 14, 2001 Memorandum of Understanding between the local union and FCI Oakdale management, stated that staff may sign up for overtime outside of their consolidated department only at the worksite where they were assigned.[4]

While working at the FCI on July 24, 2004, Patton was involved in a verbal altercation with a co-worker, Sparkey Wadley. As a result of the incident, Patton claimed that she feared for her safety and requested an "immediate transfer to the FDC" in order to avoid future contact with Mr. Wadley.[5] On July 30, 2003, former Warden Charles T. Felts ordered a Workplace Violence Committee to address Patton's allegations.[6] A Threat Assessment Team Meeting was held on August 4, 2003. Since the parties had apologized and believed they could work together in the future, the Team concluded that, while the incident did not present any serious future danger, physical contact between Patton and Mr. Wadley should be avoided as much as possible. Based on the recommendations of the Threat Assessment Team the defendants notified Patton on August 5, 2003, that she would be reassigned to the Health Services Department at the FDC until further notice and pending an additional investigation by a Special Investigative Agent into the

---

[3] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Declaration of Tyrone Clements, Exhibit 1).

[4] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Memorandum of Understanding & Explanatory Memorandum, Exhibit 3)

[5] *See* Defendant's Motion to Dismiss and/or Summary Judgment (July 24, 2003 Electronic Message from Plaintiff to Various Staff, Exhibit 4)

[6] *See* Defendant's Motion to Dismiss and/or Summary Judgment (July 30, 2005 Memorandum from Michael Brouillette entitled Situation - Cindy Patton and Sparkey Wadley, Exhibit 5).

matter.[7] Soon thereafter, another Memorandum of Understanding was issued between the local union and management including the same overtime limitations as the earlier memorandum from 2001.[8]

In his deposition, Administrative Lieutenant Joseph Higgerson ("Higgerson") testified that in November and/or early December, 2003 he was informed by the union Vice-President that Patton, while reassigned to FDC, had been allowed to work Custody overtime at FCI . Higgerson further testified that he removed Patton's access to the FCI Custody overtime program in order to comply with the August 18, 2003 Memorandum of Understanding.[9] Patton admits in the Complaint that she was aware of this restriction on overtime as of December 4, 2003.[10] The record strongly suggests that Ms. Davis could have worked overtime at the FDC at all times during her transfer but chose not to because of her preference for FCI overtime.[11]

---

[7] *See* Defendant's Motion to Dismiss and/or Summary Judgment (August 5, 2003 Memorandum, Exhibit 7).

[8] *See* Defendant's Motion to Dismiss and/or Summary Judgment (August 5, 2003 Memorandum, Exhibit 8).

[9] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Affidavit of Lieutenant Joseph Higgerson Exhibit 2).

[10] *See* Complaint ¶ 5.

[11] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Formal Administrative EEO Complaint, Exhibit 10 attached thereto). Under a Rule 12(b)(6) or Rule 56 analysis, this court would find the fact that Patton was allowed to work overtime at FDC during her reassignment, strong summary judgment evidence of both a nondiscriminatory motive of compliance with the Union agreements and, more importantly, a lack of an adverse employment decision against Patton since she always had access to one of either FCI or FCD overtime. In other words, Patton has failed to allege facts sufficient to establish the existence of two elements of her claim. However, because of Rule 12(b)(1) requires the court to determine subject matter jurisdiction prior to making a determination on the merits and because this court finds there to be no subject matter jurisdiction, the court does not base its decision on this fact.

As early as December 10, 2003 Patton complained that she was denied the opportunity to work overtime at the FCI. Patton was informed by the union President, James Deshotel, that he had discovered that she had been allowed to work overtime at the FCI in violation of the negotiated overtime procedures and that he had reported his concerns to Higgerson.[12] Patton filed an Unfair Labor Practice charge against the local union (in response to her removal from the FCI overtime roster) alleging that she had been discriminated against because she did not have union membership.[13]

At the conclusion of the investigation into the July 2003 incident between Patton and Mr. Wadley, both parties were informed on February 4, 2004 that no action would be taken against either of them.[14] Further, as soon as Patton returned to the FCI, Higgerson restored her access to the FCI Custody overtime program.[15]

Patton first sought counseling with an EEO Counselor on March 9, 2004.[16] On April 9, 2004 she completed a "Request for EEO Counseling" form in which she claimed that she had been discriminated against based on race, sex, and in reprisal for filing a workplace violence complaint when she was not allowed to work overtime. On or about July 1, 2004 Patton filed her

---

[12] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Electronic Mail Correspondence from Plaintiff, Exhibit 11).

[13] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Copies of Charge provided by Plaintiff to Agency's EEO Office, Exhibit 12).

[14] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Memoranda from Warden Joseph Young to Patton and Sparkey Wadley Exhibit 13).

[15] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Affidavit of Lieutenant Higgerson Exhibit 2).

[16] See Defendant's Motion to Dismiss and/or Summary Judgment (EEO Counselor's Report Exhibit 14).

formal Complaint of Discrimination in which she made the same allegations. On August 9, 2004, the BOP's EEO Office asked Patton why she had failed to contact an EEO Counselor within 45 days of the alleged discrimination. Patton responded that she was trying to resolve the matter with her supervisors.[17] On November 17, 2004, Patton's administrative Complaint was dismissed as untimely by the BOP.[18] Patton then filed the present suit on February 15, 2005.

## Dismissal Standard under Rule 12(b)(1)

A case is properly dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction when a court lacks the statutory or constitutional power to adjudicate the case." *Krim v. PCORDER.COM, Inc.*, 402 F. 3d 489, 494 (5th Cir. 2005) (internal quotations and citations omitted). Because the decision relates to the Court's "very power to hear the case," under Rule 12(b)(1), the district court is not limited to an inquiry into undisputed facts. It may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction. *Williamson v. Tucker*, 645 F. 2d 404, 413 (5th Cir. 1991). The Court may dismiss for lack of jurisdiction based on the complaint alone, the complaint supplemented by the undisputed facts in the record, or the complaint, undisputed facts, in addition to the court's resolution of disputed facts. *Id.* [19]

---

[17] *See* Defendant's Motion to Dismiss and/or Summary Judgment (E-Mail Correspondence, Exhibit 18).

[18] *See* Defendant's Motion to Dismiss and/or Summary Judgment (Dismissal Letter Exhibit 19).

[19] The defendants have also brought motions to dismiss pursuant to Rule 12(b)(6) or Rule 56. Typically this court would discuss the applicable standards for those motions. However, because this court chooses to dispose of this case in its entirety pursuant to the Rule 12(b)(1) motion, stating those standards would be superfluous.

## Title VII[20]

The remedy for claims of employment discrimination by federal employees under Title VII is provided in 42 U.S.C. § 2000e-16(a)-(e). *Henderson v. United States Veterans Admin.*, 790 F.2d 436, 439 (5th Cir.1986). Under this legislative scheme, federal employees must first exhaust their administrative remedies before they may bring suit in federal court. *Hampton v. Internal Revenue Service*, 913 F.2d 180, 182 (5th Cir.1990). The EEOC's regulations provide that aggrieved persons who believe they have been discriminated against must consult an EEOC Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within forty-five days of the effective date of the action, prior to filing a complaint. 29 CFR § 1614.105(a)-(a)(1). In other words, as a precondition to filing suit in federal court, Title VII specifically requires a federal employee claiming discrimination to exhaust his administrative remedies. *Randel v. U.S. Dept. of Navy* 157 F.3d 392 (C.A.5 (La.),1998. If an employee fails to comply with this requirement, the court does not have subject matter jurisdiction. *Tolbert v. U.S.* 916 F.2d 245, 247-248 (C.A.5 (Tex.),1990) (citing *Brown v. Dept. of Army*, 854 F.2d 77, 78 (5th Cir.1988) ( "The [forty-five] day filing limitation for federal employees is a jurisdictional requirement"); *Porter v. Adams*, 639 F.2d 273, 276 (5th Cir.1981). Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling. *Henderson*, 790 F.2d at 439-40; *Nealon v. Stone*, 958 F.2d

---

[20] Defendants first contend that Patton has improperly named the BOP and FCI Oakdale as defendants in this action. This court agrees. 42 U.S.C. § 2000e-16(c) requires that a Title VII suit against the federal government name as defendant "the head of the department, agency, or unit, as appropriate..." Thus, because the BOP is a component Executive Agency within the United States Department of Justice, the only proper defendant in this suit is U.S. Attorney General Alberto Gonzalez. *See Skoczylas v. Federal Bureau of Prisons* 961 F.2d 543, *544 (C.A.5 (Tex.),1992).

584, 589 (4th Cir.1992); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir.1991).

Patton admits that she was aware of her removal from the FCI overtime roster as early as December 4, 2003 yet she did not contact an EEO counselor until March 9, 2004, ninety-six days after the alleged discriminatory event. To justify this delay, Patton asserts that (1) while she knew of the discriminatory act, she thought it was an unfair labor practice committed by the union and she did not know that it was a discriminatory act of the defendants, and (2) her untimeliness should be further excused because she was attempting to resolve the matter informally with the Warden of FCC Oakdale. Neither of these arguments are sufficient to justify the present defect.

The Fifth Circuit has not recognized a plaintiff's excusable ignorance of the defendant's discriminatory act as a basis for equitable tolling. *See Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 810 n. 14 (5th Cir.1991) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 477-78 (5th Cir.1991)). The court, however, has held equitable tolling to apply in a variety of situations, including: (1) the pendency of an action between the same parties in the wrong forum; (2) the plaintiff's unawareness of facts giving rise to a claim because of the defendant's intentional concealment; and (3) the EEOC's misleading of the plaintiff about the nature of his rights. *See Hood*, 168 F.3d at 232; *Amburgey*, 936 F.2d at 810 n. 14; *Blumberg*, 848 F.2d at 644; *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302-03 (5th Cir.1979). The Fifth Circuit has further indicated that other situations might similarly merit the application of equitable tolling. *See Hood*, 168 F.3d at 232; *Blumberg*, 848 F.2d at 644. None of these circumstances, however, exists in this case.

Plaintiff has not presented any evidence to contradict the defendant's evidence that the EEOC timelines were posted and available to FCC Oakdale employees. She has also failed to demonstrate that she was affirmatively misled by the defendants in any way. Patton does not

dispute that it was Higgerson who removed her from the FCI overtime list after the local union advised him that allowing her to work overtime at the FCI violated management's agreement with the union. Further, Patton admits that she knew it was Higgerson. In other words, Patton had all the information needed to understand that this was not a unilateral decision on the part of the union.[21] EEOC regulations require timely counselor contact from the date complainant knows or should have known of the discriminatory event or personnel action, not when she perceives that the action was motivated by a discriminatory purpose. *Pacheco v. Rice*, 966 F.2d 904, 906 (5th Cir. 1992); *Chapman v. Homco, Inc.*, 886 F. 2d 756, 758 (5th Cir. 1989) (per curiam) (limitation period on Age Discrimination in Employment Act claim began running when plaintiff was notified that her employment was terminated, not when she learned the termination was based upon discriminatory motives); *See also Merrill v. Southern Methodist Univ.*, 806 F. 2d 600, (5th Cir. 1986); "To allow plaintiffs to raise employment discrimination claims whenever they begin to suspect that their employers had illicit motives would effectively eviscerate the time limits prescribed for filing such complaints." *Pacheco*, at 906. Under these circumstances, the fact that she did not immediately comprehend the defendant's role in her removal is not an adequate justification for tolling.

Patton also argues that her untimeliness should be justified by the "continuing violation" theory under *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061 (2002).

---

[21] It should also be pointed out that while Patton has failed to submit any competent evidence of actual discrimination against her, defendants have submitted the two Memoranda of Understanding which both prove, in the courts view, that the defendants acted with a nondiscriminatory purpose. Under these circumstances, allowing a plaintiff to avoid the 45 day limitation because she claims she did not know that the defendant was the culprit of the alleged discrimination effectively guarantees that plaintiffs with less than meritorious claims would never be subject to exhaustion. The more unsubstantiated the claim of discrimination, the easier it would be for the plaintiff to argue that she did not know of its existence. This cannot be the type of situation in which the time limitation should be tolled.

However, *Morgan* makes it clear that the continuing violation theory no longer applies to Title VII cases. *See Morgan*, 536 U.S. at 110-113, 122 S.Ct. 2061. With regard to the applicability of the continuing violations doctrine, a distinction should be drawn between discrimination and retaliation claims on the one hand, and hostile work environment claims on the other hand. *Id.* Hostile work environment claims, by their very nature involve repeated conduct and thus cannot be said to occur on any particular day. *Id.* By contrast, Title VII's definition of "unlawful employment practices" includes many discrete acts but does not indicate that the term "practice" converts related discrete acts into a single unlawful practice for timely filing purposes. As a result, discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges). *Id.* Thus, a discrete retaliatory or discriminatory act "occurs" on the day in happened. The holding in *Morgan* makes it clear that the alleged discriminatory act in this case "occurred" on December 4, 2003 when Patton was informed of her removal from the FCI Overtime list.

Additionally, Patton's attempts to resolve the matter informally with management officials, absent more, does not excuse her untimeliness. The pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods. *Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 506 (U.S.Del.,1980) (citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976)); *Lukaszek v. U.S. Postal Service*, 1999 WL 1087097, 1 (E.E.O.C. November 18, 1999 (citing *Hosford v. Department of Veterans Affairs*, 1989 WL 1006722, 3 (E.E.O.C., June 9, 1989) (holding that the fact that on May 20, 1998, Complainant asked his supervisor to reply or explain a June 23, 1997 evaluation does not toll the 45-day time limit for initial EEO counselor contact because the Commission has specifically held that internal efforts

or appeals of an agency's adverse action and/or the filing of a grievance do not toll the running of the time limitation to contact an EEO counselor). See Hosford v. Department of Veterans Affairs, EEOC Request No. 05890038 (June 9, 1989). Thus, Patton's attempts to resolve her claims informally with defendants do not toll the limitation period for her to initiate timely EEOC counseling.

Accordingly, Patton's failure to seek timely EEO counseling bars her from pursuing her EEOC claims in federal court. For the forgoing reasons, defendant's Motion to Dismiss pursuant to Rule 12(b)(1) is GRANTED for lack of subject matter jurisdiction.

Lake Charles, Louisiana, this 26 day of October, 2005.

PATRICIA MINALDI
UNITED STATES DISTRICT COURT